UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| TAFFEE LIGION, <br><br> Plaintiff, <br><br> v. <br><br> ULINE, INC., <br><br> Defendant. | ) <br> ) <br> ) Civil No. 3:24-cv-00024-GFVT-EBA <br> ) <br> ) <br> ) <br> ) **MEMORANDUM OPINION** <br> ) **&** <br> ) **ORDER** <br> ) <br> ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Taffee Ligion suffered an injury to her hand after using a retractable knife sold by Uline, Inc. Ligion asserts products liability and breach of warranty claims against Uline. Uline moved for summary judgment, arguing that Ligion's claims fail because she cannot prove the existence of a defect or causation without the support of expert testimony. Ligion disagrees that expert testimony is needed in this case. For the following reasons, the Court **GRANTS** Uline's Motion for Summary Judgment.

**I**

On February 13, 2023, Taffee Ligion clocked in for work at 6:00 a.m., received her daily assignment, and began using a retractable knife to open boxes. At one point, she looked at her hand and noticed a cut in her glove. She began to feel pain and saw blood gushing from her left hand. [R. 23-6 at 6–7.] This workplace accident led to this lawsuit.

At the time of the incident, Ligion worked as a material handler at Magna Seating of Louisville. *Id.* at 4. Her job duties included "opening sealed boxes that parts were stored in." *Id.* To open boxes, Ligion used a H-2403 Uline Comfort Grip Self Retracting Safety Knife. *Id.*

at 8. Greg Vincent, Ligion's supervisor, trained her on using the knife safely. *Id.* Ligion used the knife daily from December 2022 until the incident on February 13, 2023. *Id.* Since the injury, Ligion still "experiences pain in her hand, is unable to do the activities she once was, and will never have full function in her left hand again." *Id.* at 13.

Uline Inc. is a "leading U.S. distributor of shipping, packaging and industrial supplies" based in Wisconsin and incorporated in Delaware. [R. 23-1 at 3; R. 1 at 2.] Uline sells the Model H-2403 in question. A Chinese company, Ningbo Xingwei Cutting-Tolls Technology Co., LTD, designed and manufactures the H-2403. [R. 23-1 at 1.] The H-2403 knife

> is a manually operated utility knife comprised of a spring-loaded, self-retracting blade assembly that is designed to automatically retract the blade into the handle once it loses contact with the cutting surface, regardless of whether the user maintains pressure on the thumb slider. The handle is constructed from zinc with a rubberized coating. The knife is designed to accommodate standard carbon steel utility blades measuring 2.4 inches by 0.74 inches and 0.6 mm thick.

[R. 22-1 at 2.] In other words, the H-2403 is a box cutter that self-retracts whenever the blade loses contact with a cutting surface. But the self-retracting mechanism is complex. Troy Graham, a licensed mechanical engineer, described it as so:

> The self-retracting feature of the Exemplar functions via an assembly of two, spring-loaded plates. A metal slide plate houses the blade and translates with a separate, plastic slide plate due to mating surfaces at various detent points. The plastic slide plate contains a protrusion that extends upward through a slot and is controlled by the thumb slider. When the thumb slider is slid toward the blade extension position, both the metal slide plate and the plastic slide plate translate forward. When making a cut, the upward force induced on the blade pivots the metal slide plate to where it is no longer mechanically obstructed by the plastic slide plate. Once the cut is finished, there is no force keeping the blade extended or the metal slide plate translated forward, causing both to automatically retract due to the connected spring. The plastic slide plate will retract once the thumb slider is released. If the thumb slider is slid forward and no cut is made, both the metal slide plate and the plastic slide plate retract once the thumb slider is released since the metal slide plate does not pivot.

*Id.* at 3.  Neither Ligion nor Magna Seating are in possession of the actual knife that lacerated the plaintiff's hand.  [R. 23-1 at 9.]

Ligion filed this lawsuit on February 12, 2024, in the Franklin County Circuit Court.  [R. 1.]  Uline timely removed this action to federal court, citing diversity jurisdiction.  *Id.*  The parties conducted fact discovery.  On May 30, 2025, Ligion notified Uline that she did not intend to call an expert witness "because the failure of the safety knife to retract is not beyond a layperson's ability to understand."  [R. 20.]  In her expert notice, Ligion wrote that she planned to rely "upon COSHA report number 002-24 from Inspection: 318147097 CSHO ID B1047 from the Kentucky Education and Labor Cabinet Occupational Safety and Health Program."  *Id.*  Ligion filed a complaint with the Division of Occupational Safety and Health (OSH) Compliance that they received on April 15, 2024.  [R. 23-7.]   Jennifer Monroe, a Safety Compliance Supervisor with OSH Compliance, informed Ligion on August 13, 2024, that OSH Compliance "conducted an investigation at Magna Seating of America as a result of your complaint received on April 15, 2024.  The investigator thoroughly checked all items listed in your complaint and we are not able to issue a citation relating to the items listed in the complaint."  *Id.* at 2.

OSH Compliance Officers visited Magna Seating where they conducted a walkaround inspection and interviewed employees and supervisors.  Monroe's report made findings to four allegations.  The first allegation addressed Ligion's injury on February 13, 2024.  *Id.* at 5.  OSH issued a finding that, based on these interviews, Magna Seating "was looking for a new type of box cutter to use and that this incident fast-tracked the company to pick which new box cutter to use."  *Id.*  The report made no findings as to whether or not the box cutter was defective, restating only Ligion's claim that she used a "retraction box cutter" that "did not retract as it was promoted to do."  *Id.*  The second allegation addressed an alleged February 28, 2024, incident

3

"caused by the same retraction box cutter [sic] a product made by Uline" *Id*. OSH determined through interviews with management and employees that "there was no knowledge of this incident happening." *Id*. The third complaint related to an undated event where an employee cut her leg using a box cutter. *Id*. at 6. Through interviews, OSH determined that management did not have any record of the incident. *Id*. The fourth complaint involved an employee who cut his finger using a box cutter at his own residence, where OSH does not have jurisdiction. *Id*. OSH made an additional finding after analyzing the company's incident logs. *Id*. OSH noted an incident from 2024 where an employee cut themselves using a box cutter but found that the injury occurred because the employee removed the safety guard on the box cutter. *Id*. Ultimately, the OSH report does not contain any thorough descriptions of the box cutter at issue or even a detailed account of the incident, beyond what Ligion already provided.

On July 15, 2025, Uline filed their Rule 26(a)(2)(B) expert disclosure. Uline disclosed the anticipated expert testimony and written report of Troy Graham, P.E. [R. 22.] Graham is a mechanical engineer employed at SEA, Ltd. in Columbus, Ohio. [R. 22-1 at 5.] Graham "utilizes a variety of engineering techniques and analyses, in accordance with the Scientific Method and applicable principles, to identify factors present during events that result in personal injury or property damage." *Id*. Graham reviewed Plaintiff's Responses to Defendant's First Set of Interrogatories and Request for Production of Documents, a scanned photograph of a knife resembling the Uline Model H-2403, and the H-2403 instructions. *Id*. at 1. Graham then evaluated a Model H-2403 knife over a period of two days in July 2025.[1] *Id*. at 2. Graham wrote that the examined boxcutter "did not exhibit any evidence of a manufacturing or design

---

[1] Graham did not review the exact knife involved in Ligion's injury, as neither plaintiff nor Magna Seating are in possession of that knife. [R. 23-1 at 9.] Graham's report notes that "S-E-A has not been given an opportunity to examine the subject knife." [R. 22-1 at 3.]

4

defect when used as intended during [my] examination and testing of the product." *Id.* at 3. Graham determined that four scenarios could result in a failure of the knife's self-retract function:

1. The internal components were altered and/or removed in order to intentionally defeat the self-retracting feature of the Knife;
2. The metal slide plate spring was broken and/or damaged such that it no longer applied spring tension and the metal slide plate no longer retracted;
3. The metal slide plate was mechanically deformed such that it could no longer retract;
4. The travel path of the metal slide plate was mechanically obstructed, whether by debris, damage to itself, or damage to other components, preventing the plate from retracting after a cut.

*Id.* The inability to examine the actual knife prevented Graham from reaching any definitive conclusion as to what happened with the knife on February 13. Graham wrote that "[t]he aforementioned scenarios cannot be ruled in or out without examining the subject knife," but noted that "it is likely that the plastic side plate is damaged, mechanically obstructed, and/or the spring is no longer applying tension" based upon the photograph he examined. *Id.* Graham could not rule out additional "potential causes and contributing factors to those scenarios, i.e., manufacturing defects, damage from intended use, damage from misuse, alteration, etc." without examining the actual knife. *Id.* In plain English, Graham ultimately could not conclude what *exactly* led to the failure of the knife in question.

On August 28, 2025, Uline filed its motion for summary judgment. [R. 23.] Uline advanced three arguments. First, Uline argues that Ligion's products liability claims fail because Ligion has failed to retain an expert to opine on the existence of a defect. Second, Uline argues that Ligion's product liability claims fail because the failure to retain an expert to opine on legal causation. Third, Uline argues that Ligion's breach of warranty claims fail because Uline and Ligion are not in privity under Kentucky's warranty laws. Ligion responded to Uline's summary

5

judgment motion on September 18, 2025. [R. 24.] Ligion maintains that she has provided enough "circumstantial evidence to allow the jury to infer that the knife was defective and caused Plaintiff's injuries — even without direct examination of the product." *Id.* at 3. Uline replied on October 10, 2025. [R. 25.] This issue now stands ripe for review.

## II

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party." *Hall v. Warren,* 443 Fed.Appx. 99, 106 (6th Cir. 2011) (internal quotation marks omitted). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986) (internal quotation marks omitted)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a diversity action, federal courts must apply the substantive law of the state's highest court. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938). "If the state's highest court has not spoken sufficiently to establish a clear rule of law, then it is the responsibility of the federal court to 'ascertain from all available data what the state law is and apply it.'" *ACME Roll*

*Foaming Co. v. Home Ins. Co.*, 31 Fed. App'x 866, 870 (6th Cir. 2002) (quoting *Baily v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)).

Ligion brought this claim advancing four counts including negligence and gross negligence, strict liability, failure to warn, breach of implied warranty, and breach of express warranty. [R. 1-1 at 3–9.] The Court will first analyze Ligion's product liability claims. The Court will then address Ligion's warranty claims.

A

The Product Liability Act governs products liability actions in the Commonwealth of Kentucky. *See* Ky. Rev. Stat. § 411.300–.350. The Act "does not specify a basis of liability but leaves the actions to be brought under the court-created bases of liability." Ronald W. Eades, *Overview of Product Liability Act of Kentucky*, Ky. Prod. Liab. L. § 1:7 (2025-2026 ed.). Kentucky courts hold that a plaintiff may advance three different causes of action against a manufacturer: (1) strict liability, (2) negligence, and (3) breach of warranty. *Prather v. Abbott Lab'vs*, 960 F. Supp. 2d 700, 705 (W.D. Ky. 2013) (citing *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985)). Kentucky recognizes three product liability theories: (1) defective design, (2) defective manufacture, and (3) failure to warn. *Id.* at 705–06 (citing *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky. 1995), *overruled on other grounds by Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009)). A plaintiff asserting a product liability claim must prove the existence of a defect. *Id.* at 706 (citing *McCoy v. Gen. Motors Corp.*, 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998)). The plaintiff must also prove legal causation. *Id.* (citing *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 537 (6th Cir. 1995) (internal citations omitted).

1

The issue before the Court is whether Ligion's product liability claims fail as a matter of law because she has failed to retain an expert to opine on the issue of the existence of a defect and causation.

"Under Kentucky law, 'proof of a *defective product* is essential to the [strict] products liability or the negligence claim.... the distinction between the two claims is of "no practical significance."'" *Christian v. Altaire Pharms., Inc.*, No. CV 5: 20-306-DCR, 2020 WL 6051255, at *4 (E.D. Ky. Oct. 13, 2020), *aff'd*, No. 20-6360, 2021 WL 3578812 (6th Cir. Aug. 10, 2021), and *aff'd*, No. 20-6360, 2021 WL 3578812 (6th Cir. Aug. 10, 2021) (citing *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996)).  As to a failure to warn claim, liability only follows if the defendant "knew or should have known of the inherent dangerousness of the product and failed to accompany it with the quantum of warning which would be calculated to adequately guard against the inherent danger." *Primal Vantage Co., Inc. v. O'Bryan*, 677 S.W.3d 228, 240 (Ky. 2022) (quoting *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 79 (Ky. 2010)).  Without evidence of a defect, the plaintiff's claim cannot survive summary judgment. *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 680 (E.D. Ky. 2013), *aff'd*, 579 F. App'x 372 (6th Cir. 2014).  "A jury cannot speculate that a product is defective simply because an unusual or unexplained event has occurred." *Thomas v. Manchester Tank & Equip. Corp.*, 2005 WL 3673118, at *2 (W.D. Ky. May 13, 2005).

How does a plaintiff prove the existence of a defect?  Most commonly, plaintiffs hire an opinion witness to provide expert testimony.  "[Expert] testimony is required unless the internal workings of the product are within the common knowledge of the ordinary layperson." *Halsey v. AGCO Corp.*, No. 16-CV-461-JMH, 2017 WL 4767679 (E.D. Ky. Oct. 20, 2017), *aff'd*, 755 F. App'x 524 (6th Cir. 2018) (quoting *Stevens v. Keller Ladders*, 1 Fed. App'x 452, 458 (6th Cir.

8

2001)). "Under either a design or manufacturing defect theory, such expert proof is necessary to show that the alleged defect was a substantial factor in causing the plaintiff's injury." *Id.* (quoting *Burgett*, 970 F. Supp. 2d at 683). "In most product liability cases, expert testimony plays a crucial role in establishing" the existence of a defect. *Burgett*, 970 F. Supp. 2d at 681. As recently as January 2025, the Sixth Circuit noted that "Kentucky law may require 'expert testimony… in cases in which the question is of a complex and technical nature such that a lay juror could not, without the aid of the expert, infer that a defective condition of the product caused the product's failure and caused injury to the plaintiff.'" *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (quoting *Stevens v. Keller Ladders*, 1 F. App'x 452, 458 (6th Cir. 2001)).

However, Kentucky law does not "expressly predicate recovery on the introduction of expert testimony." *Burgett*, 970 F. Supp. 2d at 681. Expert testimony is unnecessary where a juror can understand the intricacies of a claim "through their common knowledge or experience." *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 374 (Ky. 2014). Without using expert testimony, a plaintiff may rely on circumstantial evidence, but only where the circumstantial evidence is "sufficient to tilt the balance from possibility to probability." *Morales*, 151 F.3d at 500. "Evidence that induces mere 'surmise or speculation' does not establish a defect." *Honaker v. Innova, Inc.*, 2007 WL 1217744 (W.D. Ky. Apr. 23, 2007) (citing *Highway Transport Co. v. Daniel Baker Co.*, 398 S.W.2d 501, 502 (Ky. 1966)).

Here, the fundamental disagreement comes down to a single question — can Ligion prove the existence of a defect in the knife without expert testimony? Uline argues that "this case will require, at minimum, the internal self-retraction mechanisms of the knife." [R. 23-1 at 14.] Uline's expert, Graham, determined that there could be four likely scenarios leading to the

9

knife's failure to retract, including alterations to the knife, damage to the knife, or obstruction of the internal mechanisms. [R. 22-1 at 3.]

Ligion argues that she does not need an expert or the actual subject knife. Instead, she "does not intend to call an expert witness because the failure of the safety knife to retract is not beyond a layperson's ability to understand." [R. 20.] According to the filings before the Court, it appears that Ligion's sole evidence derives from the CSHO report and her pleadings thus far.

Even viewing the evidence and drawing all reasonable inferences in favor of Ligion, she fails to make a showing sufficient to establish the existence of a defect — an essential element to her case and one on which she bears the burden of proving at trial. *Celotex*, 477 U.S. at 322. Neither party has possession of the *actual* knife that injured Ligion. Ligion relies instead on a purported photograph of the knife and a report from a Compliance Safety and Health Officer which made no claims as to the defectiveness of the knife and which failed to substantiate other claims of injuries related to the knife. Graham, the professional engineer, opined that any number of things could have caused the knife's malfunction. The CSHO report even contained an example of one of Graham's hypotheses by highlighting an incident where an employee injured themselves using a boxcutter because they removed the knife's safety guard.

It is not clear to the Court that the internal design of a boxcutter is within the common knowledge of laypersons. A plaintiff must put forth expert testimony unless a defect is one that the jury could comprehend as well as a specially trained expert could. *Burgett*, 970 F. Supp. 2d at 681. A boxcutter is a simple enough device. Most adults likely understand the purpose of a boxcutter. But would a layperson understand the mechanics that go into designing a boxcutter like the one Uline sells, which has a safety function that retracts the blade unless it is pressed against a cutting surface? In other words, is an ordinary person "familiar enough with the

10

principles of [box cutter] engineering to know whether a [box cutter] is defective[?]" *Wells v. Wal-Mart Stores Inc.*, No. CV 15-69-ART, 2016 WL 1453912, at *2 (E.D. Ky. Apr. 13, 2016).

The design of a self-retracting boxcutter is not within the realm of knowledge of the ordinary person. A layperson would be lost as to how a boxcutter "automatically retract[s] the blade into the handle once it loses contact with the cutting surface, regardless of whether the user maintains pressure on the thumb slider" without the assistance of expert testimony. [R. 22-1 at 2.] Matters involving technical understanding such as this require the testimony of an expert to prove the existence of a defect. *See, e.g., Wells*, 2016 WL 1453912, at *2 (granting summary judgment where plaintiff did not provide an expert to prove the existence of a defect in a toilet seat); *Yonts v. Easton Tech Prods., Inc.*, No. 3:11-cv-535-DJH, 2015 WL 3408937, at *5–6 (W.D. Ky. May 27, 2015) (dismissing a plaintiff's claims where the plaintiff failed to provide an expert to opine on the existence of a defect in an arrow that broke when shot from a bow); *Honaker*, 2007 WL 1217744, at *2–3 (granting summary judgment where plaintiff failed to provide an expert to opine on the existence of a defect in a pressure cooker); *Mayer v. Louisville Ladder Inc.*, No. 3:22-CV-237, 2024 WL 3106900 (W.D. Ky. June 24, 2024) (expert testimony required to explain metal fatigue on a ladder).

Based on the little evidence that Ligion plans to present, the jury "would be left to speculate whether the [knife] even malfunctioned, whether such malfunction was attributable to a defect, whether someone altered the [knife], whether the [knife] was improperly maintained, or any number of other theories." *Thomas*, 2005 WL 3673118 at *3. Indeed, as Graham points out, it is impossible to know what happened given that the box cutter which injured Ligion is not in possession of either party. Instead, Ligion asks the jury to "speculate as to whether there was a defect in the knife" without providing any evidence for the jury to examine besides her own

11

pleadings and a CSHO report that says nothing about defects. *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 793 (6th Cir. 2005). Even viewing all reasonable inferences in favor of Ligion, this is plainly not enough to prove the existence of a defect in the Model H-2403 knife.

2

The second question before the Court is whether Ligion's product liability claims fail as a matter of law because she has failed to retain an expert to opine on the issue of causation.

Courts may consider claims of strict liability, negligence, and breach of warranty together because all three claims require legal causation as an element that the plaintiff must establish. *Templeton v. Wal-Mart Stores E., LP*, No. 08-CV-169-GFVT, 2011 WL 4591937, at *2 (E.D. Ky. Sept. 30, 2011) (quoting *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970)). Causation is normally a question of fact for the jury but becomes a question of law "when one conclusion may reasonably be drawn from the evidence." *Garvin v. Ethicon, Inc.*, 616 F. Supp. 3d 658, 669 (W.D. Ky. 2022) (quoting *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 92 (Ky. 2003)). "Under either a design or manufacturing defect theory, expert proof is necessary to show that the alleged defect was a substantial factor in causing the plaintiff's injury." *Halsey*, 2017 WL 4767679, at *3 (citing *Burgett*, 970 F. Supp. 2d at 683). "Several courts have stated that 'expert witnesses are generally necessary, indeed essential, in products liability cases… to prove such matters as a product defect and proximate causation." *Jackson v. E-Z-GO Div. of Textron, Inc.*, 326 F. Supp. 3d 375, 401 (W.D. Ky. 2018) (quoting *Fimbres v. Garlock Equip. Co.*, No. 3:11-CV-226-CRS-JDM, 2014 WL 2612513, at *3 (W.D. Ky. June 11, 2014)) (collecting cases).

As before, Ligion offers no evidence to support legal causation, an element that she has the burden of carrying forward at trial. In her response, Ligion argues simply that there is

12

enough circumstantial evidence to permit proof of a defect without expert testimony. It is true that parties can rely on circumstantial evidence to establish causation, but only where the evidence sufficiently tilts the balance from 'possibility' to 'probability.' *Perkins v. Trailco Mfg. & Sales Co.*, 613 S.W.2d 855, 858 (Ky. 1981). "Causation cannot be established from the mere occurrence" of an incident. *Saint Elizabeth Med. Ctr., Inc. v. Arnsperger*, 686 S.W.3d 132, 141 (Ky. 2024) (Court held that expert testimony as to causation was necessary even assuming that the case was not a traditional medical malpractice action). Ligion never explicitly makes a *res ipsa loquitur* argument.[2] But that is essentially what she invites the Court to accept by arguing that the mere existence of an injury means that the knife was defective and caused her injuries. "*Res ipsa loquitur* — colloquially referred to as the Layman's Exception — is only applicable where causation is established." *Id.* (citing *Cox v. Wilson*, 267 S.W.2d 83, 84 (Ky. 1954)).

      The Court is not convinced that Ligion has proven the existence of causation. She states that "Plaintiff's testimony, photographs, OSHA documentation of other workplace injuries involving the same model knife, and Uline's own admissions provide a sufficient quantum of circumstantial evidence to allow the jury to infer that the knife was defective and caused Plaintiff's injuries." [R. 24 at 3.] The compliance report plainly says nothing about "other workplace injuries" involving the boxcutter.[3] None of Uline's answers to interrogatories support a finding as to causation. Without the actual knife that caused the injury, the jury would have to speculate and guess as to what *caused* any defect in the knife.

---

[2] Res ipsa loquitur is a "Latin phrase, which means nothing more than the thing speaks for itself," and is simply "[o]ne type of circumstantial evidence." *Prosser and Keeton on Torts*, Sec. 39 (5th ed. 1984).

[3] The report mentioned Ligion's injury but noted that employees and management were unaware of the other allegations or held that the agency did not have jurisdiction because an injury occurred at an employee's home while he was off duty. Notably, the report indicated that one of the injuries reported to Magna Seating occurred because an employee removed safety features from the Uline knife. *See* [R. 23-7.]

Ligion's evidence consists of a single photograph of the knife and her testimony that the knife injured her. This circumstantial evidence does not allow for a reasonable inference that a defect existed, much less that it *probably* caused Ligion's injury rather than just *possibly* caused it. Without expert opinion testimony to support the element of causation, Ligion cannot meet her burden of proof at trial and summary judgment is appropriate.

B

The final issue before the Court is whether Ligion's breach of implied and express warranty claims fail as a matter of law due to a lack of privity between Ligion and Uline.

In Kentucky, a claim of breach of implied or express warranty "is only viable when privity of contract exists between the commercial seller and the injured party or if the injured party is one of the persons described in KRS 355.2-318." *Bridgefield Cas. Ins. Co. v. Yamaha Motor Mfg. Corp. of Am.*, 385 S.W.3d 430, 434 (Ky. Ct. App. 2012). Privity of contract refers to the existence of a buyer-seller relationship. *Id.*; *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 463 (Ky. 2006), *as modified on denial of reh'g* (Jan. 25, 2007). Kentucky's exception to the privity requirement is limited. The exception statute provides that:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Ky. Rev. Stat. § 355.2-318. The Kentucky courts are clear: "the Legislature did not intend to include employees of the buyer within the parameters of the statute." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999).

Privity exists between Uline and Magna Seating, Ligion's employer. There is no privity between Uline and Ligion, an employee of Uline's customer. Ligion argues that warranty claims

14

extend to all foreseeable users. [R. 24 at 5.] But this is an incorrect statement of the law. Kentucky's exception only extends to the buyer's family, other members of the household, or guests. Ky. Rev. Stat. § 355.2-318. Ligion does not fit the definition of any of these special relationships – she is an employee of the buyer, Magna Seating. Thus, Ligion's warranty claims fail as a matter of law because she is not in privity with Uline and is not one of the persons described in Kentucky's privity exceptions statute.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby ordered as follows:

1. Defendant's Motion for Summary Judgment **[R. 23]** is **GRANTED;**

2. This action is **DISMISSED** and **STRICKEN** from the Court's active docket; and

3. A Judgment will be entered contemporaneously herewith.

This the 3d day of December, 2025.

Gregory F. Van Tatenhove
United States District Judge